Bruce BROWN and Daniel
Charest, Petitioners,

v.

**DEPARTMENT OF JUSTICE and
Immigration & Naturalization
Service, Respondents.**

No. 82–1729.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 10, 1983.
Decided Aug. 26, 1983.

Joe Goldberg, Washington, D.C., for petitioners.

John S. Koppel, Atty., U.S. Dept. of Justice, Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and Robert S. Greenspan, Atty., U.S. Dept. of Justice, Washington, D.C., were on the brief, for respondents.

Before ROBINSON, Chief Judge, TAMM, Circuit Judge, and JAMES F. GORDON,* U.S. Senior District Judge for the Western District of Kentucky.

Opinion for the court filed by Circuit Judge TAMM.

Dissenting opinion filed by Senior District Judge JAMES F. GORDON.

TAMM, Circuit Judge:

The issue in this case is whether petitioners are entitled to an award of back pay and benefits that they lost while they were indefinitely suspended without pay from the United States Border Patrol. The Merit Systems Protection Board (MSPB) order under review denied petitioners all relief. We now affirm the MSPB order as to petitioner Bruce Brown and remand as to petitioner Daniel Charest for a determination of back pay and benefits.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

## I. FACTS

On September 25, 1979, petitioners Bruce Brown and Daniel Charest, border patrol agents with the United States Border Patrol, Department of Justice, Immigration and Naturalization Service, were indicted by a federal grand jury. Brown and Charest were each indicted on one count of conspiring with each other and with two other Border Patrol agents to defraud the United States by interfering with the functions of the Border Patrol. Additionally, Brown was indicted on two counts of willfully violating the civil rights of suspected illegal aliens; Charest was also indicted on one count of willfully violating illegal aliens' civil rights and was indicted on a third count alleging perjury before the grand jury.

On the day following their indictment, petitioners were notified that the United States Border Patrol proposed to suspend them indefinitely without pay pending disposition of the criminal charges. Instead of the usually required thirty days' notice, petitioners received only ten days' notice of the proposed action pursuant to 5 U.S.C. § 7513(b)(1) (Supp. V 1981), which allows the agency to give less than thirty days' notice if "there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed." On October 10, 1979, petitioners and their attorney met informally with Chief Patrol Agent Donald M. Cameron and responded orally to the proposed adverse action. On October 15, 1979, Cameron informed petitioners of his decision to suspend them indefinitely without pay effective October 16, 1979. This decision was based entirely on the indictment itself; the agency undertook no independent investigation and presented no evidence of wrongdoing by petitioners other than the indictment.

Petitioners appealed their suspensions to the MSPB, and on January 22, 1980, a formal hearing was held before a Presiding Official of the MSPB. Again, the only evidence of petitioners' wrongdoing presented by the agency was the indictment. On March 4, 1980, the Presiding Official sustained the agency's suspension of petitioners, finding that the indictment itself satisfied the statutory requirement that the agency action be "supported by substantial evidence." 5 U.S.C. § 7701(c)(1)(A) (Supp. V 1981). The MSPB agreed to review the Presiding Official's decision pursuant to 5 U.S.C. § 7701(e)(1)(A) (1976). On June 1, 1982, after supplemental briefing, the MSPB affirmed the Presiding Official's decision, and petitioners appealed to this court under 5 U.S.C. § 7703(b)(1) (Supp. V 1981).[1]

## II. DISCUSSION

### A. The Parties' Arguments

The parties' dispute stems from the agency's admission that its action against petitioners was based solely upon the indictment. Testimony of Donald M. Cameron, Chief Patrol Agent, Before MSPB Presiding Official, Joint Appendix B at 26–28. Petitioners point out that the agency's reliance on the indictment may mean either that the agency suspended petitioners simply because they had been indicted or that the agency suspended petitioners because they allegedly committed the acts charged in the indictment. Petitioners argue that because an employee can be suspended only for "disciplinary reasons," 5 U.S.C. § 7501(2) (Supp. V 1981), and for "such cause as will promote the efficiency of the service," id. § 7513(a), the agency could not lawfully rely on the mere fact of indictment in suspending them. The mere fact of indictment, petitioners contend, cannot establish "cause" to suspend an employee because indictment is not an act of the employee. Furthermore, petitioners assert, reliance solely on an employee's indictment is insufficient to satisfy the requirement that

---

1. The Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 144, 96 Stat. 45 (to be codified at 5 U.S.C. § 7703(b)(1) (1982)), effective October 1, 1982, vested exclusive jurisdiction to review orders of the MSPB in the United States Court of Appeals for the Federal Circuit. Because the petition for review here was filed with this court on June 30, 1982, before the effective date of the Act, we have jurisdiction in this case.

there be a nexus between the alleged misconduct and the employee's job performance or other substantial federal interest. *See Doe v. Hampton,* 566 F.2d 265, 272 (D.C.Cir.1977). According to petitioners, the "cause" and "nexus" requirements can be met only if the agency relied on the acts charged by the indictment in suspending them. The indictment, petitioners contend, is not itself evidence that they committed those acts, and respondent therefore failed to prove the petitioners' wrongdoing by a preponderance of the evidence as required by 5 U.S.C. § 7701(c)(1)(B) (Supp. V 1981).

Respondent replies that "cause" and "disciplinary reasons" are not the only lawful bases for suspension; an employee can also be suspended, respondent asserts, if the agency has "reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed." 5 U.S.C. § 7513(b)(1) (Supp. V 1981). Thus, in respondent's view, the very fact that petitioners were indicted gave the agency the requisite "reasonable cause to believe the employee has committed a crime." The nexus requirement is also satisfied, respondent contends, by the face of the indictment, which discloses that petitioners were charged with unlawful acts directly involving their law enforcement functions and allegedly committed while they were on duty with the Border Patrol.

Nevertheless, petitioners insist that because the agency must have relied on the substance of the charges presented in the indictment in deciding to suspend them, the agency violated their rights under the due process clause of the fifth amendment. The injury done to their reputations and to their financial interests by the indefinite suspensions constituted a deprivation of protected liberty and property interests, which was effected, petitioners argue, without the minimum process due them, since they were unable to confront the witnesses against them and thereby refute specific factual allegations or impeach the witnesses' credibility. Respondent counters by reiterating its contention that the suspensions were based on the very fact of petitioners' indictment on work-related charges and by

noting that at the several stages of the statutory appeals process utilized by petitioners, they were given ample opportunity to show why the indictment failed to satisfy the "reasonable cause to believe" standard.

Not only do the parties disagree about the legal standard for suspending an employee and the sufficiency of an indictment in meeting that standard, they also disagree about the standard this court should use in reviewing the final order of the MSPB. Respondent notes that there was no dispute about the fact of petitioners' indictment. Therefore, respondent argues, the MSPB's decision that petitioners' suspension was lawful is a conclusion of law under the Civil Service Retirement Act and may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 7703(c)(1) (Supp. V 1981); *cf. Jolly v. Listerman,* 672 F.2d 935, 943 (D.C.Cir.1982) (pre-Civil Service Reform Act law required application of "arbitrary or capricious" test to agency's decision to remove employee). Petitioners retort that 5 U.S.C. § 7703(c)(3) (Supp. V 1981) requires this court to set aside the MSPB order if it is "unsupported by substantial evidence." *See Gipson v. Veterans Administration,* 682 F.2d 1004, 1008, 1012 (D.C.Cir.1982).

Our review in this case is influenced by subsequent events, as represented to us by counsel during oral argument. After he was indefinitely suspended, Brown was tried on the charges contained in the indictment. A first prosecution ended in a mistrial, but upon retrial he was convicted on all counts. Following his conviction, Brown was removed from the service. Brown does not contest his removal. Charest was subsequently acquitted of all charges contained in the indictment except the perjury count, which was later dismissed, and was reinstated to active duty on December 5, 1979.

B. *Analysis*

■ An agency's decision to suspend an employee may be upheld by the MSPB on appeal only if it is "supported by a preponderance of the evidence." 5 U.S.C.

§ 7701(c)(1)(B) (Supp. V 1981). We, in turn, are empowered to review the record before the suspending agency and to set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if it is "unsupported by substantial evidence." *Id.* § 7703(c)(1), (3). We believe the MSPB's finding that petitioners were indicted on work-related charges is clearly supported by substantial evidence in the record and must, therefore, be affirmed. However, the MSPB's twin conclusions of law, (1) that indictment on work-related charges does constitute "cause" to justify a suspension and (2) that given the lawfulness of their suspensions, petitioners are not entitled to back pay and benefits, must be reviewed to determine whether those conclusions are "in accordance with law."

■ We emphasize that we, like the MSPB, view the agency's action as based solely on the fact of petitioners' indictment and not on the conduct alleged in the indictment. We reject petitioners' claim that reliance on the fact of indictment alone cannot satisfy the requirement of a nexus between the alleged wrongdoing and the employee's job performance. *See Doe v. Hampton,* 566 F.2d 265, 272 (D.C.Cir.1977). One cannot validly be indicted on abstract charges; an indictment must set forth specifically the alleged criminal conduct. Fed. R.Crim.P. 7(c). Thus, indictment on a given charge might not satisfy the nexus requirement because the charge does not appear to be related to the employee's duties, while indictment on another charge could be work-related and thereby provide the requisite nexus. Here, the face of the indictment reveals that the alleged criminal conduct directly implicated the quality of petitioners' job performance. *See* Indictment, *United States v. Otherson,* at 2 (S.D.Cal. Sept. 25, 1979) ("the conspirators would, during the apprehension and detention of illegal aliens, unjustifiably assault, beat, strike, kick and mistreat the said illegal aliens"), Joint Appendix A at 16. Therefore, the only question facing us in adjudging the lawfulness of the suspensions is whether the very fact of an employee's indictment on work-related charges, without more, can justify an indefinite suspension. The MSPB held that it could. We have never before squarely confronted this issue.

By definition a suspension requires "disciplinary reasons," 5 U.S.C. § 7501(2) (Supp. V 1981); an employee may be suspended "only for such cause as will promote the efficiency of the service." *Id.* § 7513(a). Petitioners assert that indictment on work-related charges cannot constitute "cause" to suspend an employee because indictment is not an act of the employee and is not evidence of an employee's acts. Respondent points to 5 U.S.C. § 7513(b)(1), which provides:

> An employee against whom an action is proposed is entitled to—

> (1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed . . . .

In respondent's view, this section sanctions suspensions based on "reasonable cause to believe the employee has committed a crime," and petitioners' indictment gave the agency the requisite "reasonable cause to believe." Petitioners attack this argument by asserting that (1) the quoted section is purely a notice provision, furnishing no additional substantive standard for suspension and (2) even if reasonable cause to believe were a ground for suspension, "cause" cannot exist without some proof of an employee's wrongful conduct, which an indictment cannot supply. We reject both of petitioners' arguments.

■ If "reasonable cause to believe the employee has committed a crime" were not a substantive basis for suspension, it would be superfluous to include a special notice provision for that situation. *See Alsbury v. United States Postal Service,* 530 F.2d 852, 853, 854 n. 3 (9th Cir.) (construing Postal Service Manual notice provision similar to 5 U.S.C. § 7513(b)(1) as "allowing immediate suspension of an employee when there is reasonable cause to believe he is guilty of a

crime"), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976). Thus, we believe an agency can justify its suspension of an employee by proving that it had reasonable cause to believe the employee had committed a work-related crime.

We do not accept petitioners' further argument that reasonable cause to believe can arise only from evidence of an employee's wrongful acts. Certainly, at some point along the continuum of an employee's involvement in the criminal justice system, evidence of that involvement alone gives rise to reasonable cause to believe the employee has committed a crime. At one end of the spectrum, evidence of an employee's conviction on job-related charges would undoubtedly give the agency reasonable cause to believe the employee had committed a crime, even if the agency possessed no evidence of the employee's commission of the acts. At the other end of the spectrum, evidence that an employee has been questioned by police about a job-related offense would undoubtedly not constitute reasonable cause to believe the employee had committed the crime. Once an employee is indicted on job-related charges, however, an agency has the "reasonable cause" to justify suspending an employee. This is so because an indictment must be based upon "probable cause" to believe the named individual committed the acts charged. *See United States v. Calandra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974).

Although it is well settled that an indictment is not evidence of the acts charged therein, the agency here relied solely on the fact of petitioners' indictment in suspending them; since the agency did not rely on petitioners' commission of the alleged criminal acts, the indictment was not used as evidence of those acts. An indictment is always evidence that the persons named have been indicted by a grand jury on the charges recited. From the record, it is clear that this was the only evidentiary use made of the indictment and that petitioners neither objected to its use in this manner nor disputed the fact of their indictment.[2]

Essentially, in allowing suspensions to be based solely on an employee's indictment on job-related charges, we are recognizing that when an employee is targeted by the criminal justice system, the administrative requirements of the agency are implicated. An indictment is a public record, and public knowledge that an individual formally accused of job-related crimes is still on duty would undoubtedly erode public confidence in the agency. In addition, if an employee indicted on work-related charges were retained on the job and if the employee engaged in conduct of the sort alleged in the indictment, the functioning of the agency might be severely hindered or even undermined. Indeed, here the lives of illegal aliens might have been jeopardized. An employee's suspension pending disposition of the criminal charges thus safeguards the public interest by removing the employee from a position where he or she might repeat the alleged misconduct and thereby impede the lawful functioning of the agency and destroy public confidence in the agency. This does not violate the principle that the employee is presumed innocent until proven guilty. In suspending an employee solely on the basis of his or her indictment, the agency is making no assertion about the employee's guilt or innocence; rather, the suspension is merely a means of safeguarding the legitimate interests of the agency.

The only alternative to allowing suspension on the basis of a job-related indictment is to require the agency to base the suspen-

---

**2.** This observation effectively disposes of petitioners' due process argument, which is premised on their contention that the suspensions were in fact based on the wrongdoing charged in the indictment. Petitioners assert that because the agency produced no evidence of misconduct other than the indictment, they were denied an opportunity to confront the witnesses against them and to present evidence in their own behalf. However, as we have seen, the suspensions were based on the very fact of petitioners' indictment on job-related charges. Since the administrative proceedings offered them ample opportunity to contest this fact, their due process rights were not violated.

sion on the employee's allegedly unlawful conduct and to prove independently that the conduct actually occurred.[3] Ordinarily, this would entail an administrative inquiry into the alleged conduct and, at least on appeal, the presentation of evidence at an administrative hearing to prove the misconduct. In effect, then, the agency would be required to conduct a mini-trial in order to justify its action against the employee. We have previously noted the "dangers of subjecting an employee to an administrative hearing while criminal action is pending." *Polcover v. Secretary of the Treasury,* 477 F.2d 1223, 1232 (D.C.Cir.), *cert. denied,* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973). In addition, any administrative hearings that precede trial on the criminal charges would "constitute improper interference with the criminal proceedings if they churn over the same evidentiary material." *Peden v. United States,* 512 F.2d 1099, 1103 (Ct.Cl.1975). Thus, the interests of both the employee and the public are better protected by allowing suspension based on the fact of indictment alone, rather than requiring administrative inquiry into the unlawful conduct alleged in the indictment. Even where, as here, trial on some of the criminal charges had taken place before the final administrative hearing on petitioners' suspension,[4] it is not necessary for the agency to rely on evidence presented at the criminal trial in justifying the suspension because, as we have seen, petitioners' suspension was based upon the fact of indictment itself and not upon the underlying allegedly unlawful conduct.

■ In presenting their arguments, the parties have focused on the lawfulness of the suspensions without regard to the subsequent disposition of the charges against petitioners. However, the final disposition of the charges is vitally important to an analysis of the relief due each petitioner, for we believe that the nature of a suspension based solely on an employee's indictment demands that the right to compensation for the loss of wages and benefits during the suspension period be determined by the ultimate disposition of the criminal charges and the agency's response thereto. This is so because a suspension solely on the basis of indictment on work-related charges *must necessarily* be a conditional suspen-

---

**3.** The dissent suggests that there are two alternative means of protecting the agency's interests: reassignment or administrative leave. While these alternatives may be available in some cases, neither was available here. The MSPB affirmed the Border Patrol's decision not to reassign Brown and Charest because of the "sustained, repeated, and cooperative" nature of their alleged criminal conduct. Opinion and Order, *Brown & Charest v. Dep't of Justice,* No. SF075209127, at 15 (MSPB June 1, 1982), Appendix (App.) at 226. Petitioners have not challenged the MSPB's conclusion on this point, and we see no reason to question it. As for the possibility of administrative leave, OPM regulations provide that "nonduty status with pay" may not continue for more than 10 days. 5 C.F.R. § 752.404(d)(1) (1983). These regulations, which were in effect when petitioners were suspended, *see* 44 Fed.Reg. 47,029 (Aug. 10, 1979), are presumptively valid, *Forester v. Consumer Product Safety Commission,* 559 F.2d 774, 783 (D.C.Cir.1977), and have not been challenged by petitioners. Since the disposition of the criminal charges against Brown and Charest took longer than 10 days, the regulations effectively foreclosed the possibility of leave with pay for petitioners.

In any event, the availability of alternatives to indefinite suspension does not go to the threshold issue of whether the fact of indictment alone can constitute "cause" for suspension. The possibility of reassignment or administrative leave goes only to the additional issue of the reasonableness of the penalty imposed, as the MSPB correctly recognized. Opinion and Order, *Brown & Charest v. Dep't of Justice,* No. SF075209127, at 10–11 (MSPB June 1, 1982), App. at 221–22. Our decision today merely authorizes an indefinite suspension when an employee is indicted on job-related charges and by no means requires it when a less severe penalty would adequately protect the agency's interests. In this case, however, Brown and Charest did not challenge the reasonableness of the penalty but instead staked their claim solely on the issue whether the fact of indictment alone could constitute "cause" justifying their suspensions.

**4.** Petitioners' hearing before the MSPB took place on January 22, 1980. Prior to that date, Charest had been acquitted of some charges at trial, and Brown had undergone a trial which ended in a mistrial. Petitioners claim that the agency should have relied on the transcripts from those trials to support its action before the MSPB.

sion, conditioned on the outcome of the employee's involvement in the criminal justice system.

Once an employee is either acquitted or convicted on the crimes charged in the indictment, the agency may not continue the suspension indefinitely. The agency must decide whether to reinstate or to terminate the employee. An employee, like Brown, who is ultimately convicted on the job-related charges would undoubtedly not be reinstated by the agency. It is well settled that acquittal does not entitle the employee to reinstatement, since the agency may be able to justify termination by proving the employee's actual misconduct by a preponderance of the evidence. *See Polcover v. Secretary of the Treasury,* 477 F.2d 1223, 1231–32 (D.C.Cir.), *cert. denied,* 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973); *Jankowitz v. United States,* 533 F.2d 538, 542 (Ct.Cl. 1976) (citing Court of Claims cases). Nevertheless, the agency may choose to reinstate an acquitted employee, as the agency chose to reinstate Charest.

Under the Back Pay Act, 5 U.S.C. § 5596 (1976), an employee is entitled to back pay and benefits only if the loss resulted from an "unjustified or unwarranted personnel action." In *Jankowitz v. United States,* 533 F.2d 538 (Ct.Cl.1976), the Court of Claims held that an employee lawfully suspended on the basis of his indictment on job-related charges was not entitled to back pay upon his acquittal and reinstatement by the agency. The court reasoned that awarding back pay to a subsequently acquitted and reinstated employee would be tantamount to a holding that the "acquittal in effect retroactively destroyed the legal efficacy of [the] indictment as a basis for adverse personnel action." *Id.* at 542. In so holding, we believe, the Court of Claims failed to appreciate the realities of the situation.

Normally, of course, an indefinite suspension is viewed as a discrete adverse action, and its lawfulness is judged in isolation from subsequent events. It is clear to us, however, that a suspension based solely on the fact of an employee's indictment on job-related charges is *sui generis.* It is a *conditional* adverse action, justified *ab initio* only by the weighty interests of the public and the agency. However, none of the interests served by suspending an employee who is a target of the criminal justice system are implicated once the employee's involvement with the system ends. Thus, in order to be ultimately "justified" for purposes of applying the Back Pay Act, the suspension must ripen into a termination action based on misconduct provable by the agency.

When an employee, like Charest, is acquitted and the agency chooses to reinstate him or her, it would be unfair to penalize the employee for having become a target of the criminal justice system. The suspension, based not on any proven wrongdoing by the employee but solely on the employee's indictment, has served its purpose of safeguarding the agency's lawful functioning and preserving public confidence in the agency. The employee has been vindicated by the acquittal and by the agency's decision not to initiate termination proceedings. Thus, to allow the subsequently acquitted and reinstated employee to recover back pay for the period of the suspension is not to hold that the suspension was unlawful *ab initio,* but is rather to hold that the suspension has proved to be unjustified by the agency's failure to institute termination proceedings. Once the interests of the public and the agency have been fully served, the employee deserves complete vindication. Indeed, were reparations not available for the subsequently acquitted and reinstated employee, we would have grave doubts about the lawfulness of an indefinite suspension based solely on an employee's indictment on work-related charges.

### III. CONCLUSION

In view of the dispositions of the charges on which Brown and Charest were indicted, we hold that Brown is not entitled to back pay and benefits but that Charest is entitled to correction of the personnel action taken against him and back pay and benefits for the period of his indefinite suspension without pay, October 16 to December 4,

1979. We therefore affirm the decision of the MSPB with respect to Brown, reverse the MSPB's order with respect to Charest, and remand to the MSPB with instructions to determine the appropriate amount of back pay and benefits due Charest.

*It is so ordered.*

JAMES F. GORDON, Senior District Judge, dissenting:

I respectfully dissent from so much of the majority's opinion as allows an employee to be suspended, indefinitely and without pay, simply on the basis of an indictment charging job-related offenses. Because such a practice is so unnecessary to protect governmental interests, and at the same time could so easily be abused, I would hold that the appellants' due process rights were violated. *Mathews v. Eldridge,* 424 U.S. 319 (1976).

I recognize that an agency may have valid interests at stake when one of its employees is indicted. The agency will want to maintain public confidence and assure that its functions are not hindered or undermined by the employee's continued work. But the majority seems incorrect to me when they assert that "[t]he only alternative to allowing suspension on the basis of a job-related indictment is to require the agency to base the suspension on the employee's allegedly unlawful conduct and to prove independently that the conduct actually occurred." There are still other alternatives which are far less drastic than indefinite suspension. The employee can be assigned to another agency job that is less sensitive. Or, if such a job cannot be found, the employee can be placed on administrative leave which would allow the person to continue being paid while the person's job status is in limbo.

I believe these alternatives should be obligatory because indefinite suspensions based solely on indictments are so dangerous. Indictments may be based on "probable cause" that a person committed a crime, but often—as with appellant Charest—they are not borne out. In the meantime, employees like these appellants may be cut off financially, without any realistic chance of being hired by another employer, and without any assurance that the indictment and subsequent investigation will not go on for years. Perhaps worst of all, the employees may be thrown into this limbo because of unreliable or politically motivated evidence which the employees may not know or be able to discover and refute.

The majority plainly is trying to address the most unfair aspects of this situation when it interprets the Back Pay Act as requiring that a reinstated employee be reimbursed for his lost wages, contrary to *Jankowitz v. United States,* 533 F.2d 538 (Ct.Cl.1976). While I concur with that result, it is difficult to accept the majority's rationale that Charest's suspension was lawful in 1979, but "unjustified or unwarranted" once he was acquitted several years later. Instead, I would hold that both Brown and Charest were entitled to pay so long as they could not be legally discharged. The truth is, what the agency here called an "indefinite suspension," others might more candidly call a "conditional discharge."