**Edward RICHARDSON and Lorenzo Mosely, Petitioners,**

v.

**UNITED STATES CUSTOMS SERVICE, Respondent.**

No. 93–3022.

United States Court of Appeals, Federal Circuit.

Feb. 8, 1995.

Elaine Kaplan, Deputy Gen. Counsel, Nat. Treasury Employees Union, of Washington, DC, argued, for petitioners. With her on the brief were Gregory O'Duden, Gen. Counsel and David F. Klein, Asst. Counsel.

Steven J. Abelson, Attorney, Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued, for respondent. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Jeanne E. Davidson, Asst. Director. Of counsel was Terrence S. Hartman.

Before RICH, PLAGER, and LOURIE, Circuit Judges.

PLAGER, Circuit Judge.

This is an appeal of a decision of an arbitrator that federal employees, suspended on the basis of a criminal indictment, but subsequently acquitted and reinstated, are not entitled to reinstatement with pay for the period of the suspension.[1] We vacate the decision of the arbitrator and remand for further proceedings consistent with this opinion.

1. *In re United States Customs Serv. and National Treasury Employees Union,* 99 Lab.Arb.Rep. (BNA) 489 (available on Westlaw LRR–LA database) (1992) (LEXIS Labor library, LRRLA file).

## BACKGROUND

The facts are not in dispute. In 1990, petitioners Edward Richardson and Lorenzo Mosely, Customs Inspectors for the United States Customs Service (the Agency), shared an apartment in Miami. Apparently thinking a postman was an intruder, Richardson went to the door of the apartment with a gun. Both petitioners were later arrested and both were subsequently indicted under 18 U.S.C. § 111[2] for assault on a federal officer. The Agency suspended them for an indefinite period without pay based upon the fact of their indictment. Both petitioners were tried before a jury and acquitted.

The Agency thereafter reinstated petitioners with pay, effective beginning with the date of their acquittal. The Agency denied their claim "to be re-instated with back pay, overtime and benefits which would have accrued from the time of the indefinite suspension." With the support of the National Treasury Employees Union, petitioners sought arbitration of their dispute with the Agency as provided under 5 U.S.C. § 7121(e). Petitioners claimed reinstatement with pay for the entire period of their suspension.

The arbitrator recognized that there was an apparent split among the circuits over the question of whether an employee is entitled to reinstatement with pay under these circumstances. Reading the law of this circuit as against such relief, the arbitrator denied the grievance. Petitioners bring their grievance here. As the parties do not dispute the facts of this case, only a question of law is before us.

## DISCUSSION

### A. The Nature of the Dispute and the Arbitrator's Jurisdiction

Petitioners' grievance is based on the theory that the suspension imposed by the Agency was invalid, and that they were entitled to full reinstatement with pay. Their point is that an indefinite suspension without pay,

2. Unless otherwise noted, all United States Code citations are to the 1988 edition.

based on the issuance of an indictment, is a "conditional" suspension. In order ultimately to be justified, say petitioners, the suspension must ripen into a termination action. Absent that, the suspension itself becomes unjustified and a violation of the employee's rights.

Chapter 75, Title 5, United States Code, specifies a range of adverse personnel actions which a federal agency may take against an employee. Subchapter II, §§ 7511–14, lists certain adverse actions by an agency that trigger particular procedural protections available to the employee. Included in that group is suspension for more than 14 days.

A related section, 5 U.S.C. § 7701, provides, on petition by an employee, for review of agency adverse action decisions by the Merit Systems Protection Board (MSPB), and section § 7121(e)(1) authorizes review by an arbitrator if the union's negotiated grievance procedure so provides. In either case, the exclusive forum for appeal is this court. *See* 5 U.S.C. § 7703 (for MSPB cases); 5 U.S.C. § 7121(f) (for arbitration cases). Both the petitioners and the Government base the jurisdiction of this court to hear this appeal on 5 U.S.C. §§ 7703 and 7121(f).[3]

Petitioners' theory regarding the "conditional" nature of the suspension in this case finds authority in *Brown v. Department of Justice*, 715 F.2d 662 (D.C.Cir.1983), which provides the legal underpinning upon which petitioners framed their claim. It was also the theory the arbitrator accepted to characterize the issue before him. The arbitrator viewed the case as "a common arbitration

scenario," raising the question "whether the employer had 'just cause' to suspend the employee even though he was later found not guilty." *In re United States Customs Serv.*, available on Westlaw LRR–LA database, LEXIS Labor library, LRRLA file at *4.[4]

■ As we will explain, there are now conflicting views among the courts regarding how these summary suspension cases should be analyzed, of which *Brown* is one. Although we analyze the case somewhat differently than do either of the parties, and ultimately we reject the theory of *Brown*, petitioners stated a cause of action that unquestionably brings their case within the ambit of Subchapter II.[5] The arbitrator had jurisdiction under § 7121(e)(1) to entertain their complaint; this court has jurisdiction to hear and decide an appeal from the decision of the arbitrator under the present circumstances.[6]

### B. The Statutes

Under ordinary circumstances, a federal employee against whom an agency proposes to take an adverse personnel action under Subchapter II is entitled to: (i) 30 days' advance written notice of the proposed action; (ii) an opportunity to contest the action; (iii) opportunity to be represented by counsel; and (iv) a written, reasoned decision. 5 U.S.C. § 7513(b). There is, however, a special provision applicable when suspicion of a crime is at issue:

(b) An employee against whom an action is proposed is entitled to—

(1) at least 30 days' advance written notice, *unless there is reasonable cause to*

---

**3.** The petitioners so state in their brief, and the Government does not dispute their statement.

**4.** Consistent with their theory, petitioners allege that their appeal was timely filed, for it was filed within 30 days after petitioners received notice of the arbitrator's decision. Again, this statement was not challenged by the Government. Since timely filing with the MSPB, and by derivation the arbitrator, can be waived and is therefore not jurisdictional, we need not concern ourselves with this question.

**5.** *See Bell v. Hood*, 327 U.S. 678, 681, 66 S.Ct. 773, 775, 90 L.Ed. 939 (1945): the court "must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States."

"For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.* at 682, 66 S.Ct. at 776.

**6.** As a result of this opinion, which rejects the theory of the *Brown* case, it will no longer be possible in cases of this type to lay jurisdiction under Subchapter II based on that theory. *Accord, Richardson v. United States*, 468 U.S. 317, 326 n. 6, 104 S.Ct. 3081, 3086 n. 6, 82 L.Ed.2d 242 (1984), holding that, contrary to the view of the Court of Appeals in that case, the trial court had jurisdiction to entertain the cause, but that, as a result of the Court's decision on the merits, jurisdiction would no longer lie for future claims brought in the same manner.

*believe the employee has committed a crime for which a sentence of imprisonment may be imposed,* stating the specific reasons for the proposed action.

5 U.S.C. § 7513(b)(1) (emphasis added).

That is all the statute has to say on the subject of suspensions based solely on allegations of serious crime. The statute does not say what constitutes "reasonable cause;" it does not say how long a suspension may stay in place; it does not say what triggers its termination. And it does not say what actions must be taken when such a suspension is terminated. Indeed, the statute provides mostly negative inferences, its affirmative role being simply to provide an exception to only one of the rights—30 days' advance written notice—available to an employee before an adverse action under Subchapter II may be taken.

■ Given the paucity of Congressional direction, courts of necessity have filled in some of the missing parts. The clause is read as establishing an independent standard for a limited adverse action: an indictment for a crime for which a sentence of imprisonment may be imposed will, as a general rule, provide reasonable cause for an agency to believe that the employee has committed such a crime, and, when the nature of the crime alleged relates to the employee's ability to perform his or her duties, an agency may summarily suspend the employee, without pay, pending the outcome of the criminal proceedings. *See, e.g., Pararas–Carayannis v. Department of Commerce,* 9 F.3d 955 (Fed.Cir.1993); *Dunnington v. Department of Justice,* 956 F.2d 1151 (Fed.Cir.1992); *Engdahl v. Department of the Navy,* 900 F.2d 1572 (Fed.Cir.1990). *See also Thomas v. General Servs. Admin.,* 756 F.2d 86 (Fed. Cir.), *cert. denied,* 474 U.S. 843, 106 S.Ct. 129, 88 L.Ed.2d 106 (1985).

■ While such a summary suspension may be indefinite, it is not unlimited. When the criminal justice system has arrived at its conclusion, the agency must terminate the suspension within a reasonable amount of time. *See Dunnington,* 956 F.2d at 1156 (summary suspension "must be terminated within a reasonable time following resolution

of the criminal charges"); *Engdahl,* 900 F.2d at 1578 (delay in terminating summary suspension was reasonable under the circumstances).

Thus it can be seen that, while the statute is silent on many of the consequences related to a summary suspension under the special clause found in § 7513(b)(1), the courts have filled in some of the blanks. One of the blanks, the issue involved here, namely under what circumstances, if any, may an employee be entitled to reinstatement with pay to a date earlier than the date of acquittal, has been filled in with somewhat inconsistent, if not conflicting, results.

### C. The Cases

Two cases are cited by the parties as dispositive of the issue before us: *Jankowitz v. United States,* 533 F.2d 538, 209 Ct.Cl. 489 (1976), decided in 1976 by our predecessor court, the Court of Claims, and upon which the Government bases its position; and *Brown v. Department of Justice,* 715 F.2d 662, mentioned earlier, decided in 1983 by the Court of Appeals for the District of Columbia Circuit (D.C.Circuit), upon which petitioners stand.

In *Jankowitz,* the petitioner, an employee of the Federal Housing Administration, was indicted for bribery and suspended by the agency. He was later acquitted of all charges in a jury trial, and restored to duty. The Government agreed he was entitled to reinstatement with back pay for the period between his acquittal and his restoration to duty, but denied reinstatement with back pay for the time he was suspended prior to acquittal.

Jankowitz then brought suit for the withheld back pay in the Court of Claims, basing his suit on the Back Pay Act of 1966, 5 U.S.C. § 5596 (1970). The Court of Claims denied his claim. "[T]he Back Pay Act of 1966 authorizes us to make such an award only where it appears that the plaintiff has undergone 'an unjustified .or unwarranted personnel action.'" *Jankowitz,* 533 F.2d at 541–42, quoting 5 U.S.C. § 5596(b) (1970). "Since we find that the Government in fact followed applicable procedural recommendations and safeguards ..., we do not agree

that plaintiff's indefinite suspension without pay was either unjustified or unwarranted. This much of plaintiff's claim for back pay must fail." *Id.* at 544.

*Jankowitz* is read by the Government as establishing the rule that reinstatement with back pay for the period of the suspension that was prior to an acquittal *never* can be made.[7]

In *Brown v. Department of Justice,* one of two indicted and suspended individuals was subsequently acquitted, and was then reinstated by the agency. The employee challenged the agency's right to suspend on the basis of an indictment alone. The MSPB upheld the agency. The employee appealed to the D.C.Circuit.[8] That court held that the initial suspension on the basis of an indictment was proper, but went on to order that, following the acquittal, back pay must be paid to the date the suspension is imposed.

The court described a summary suspension based solely on the fact of an employee's indictment as *sui generis,* and a "conditional" adverse action. *Brown,* 715 F.2d at 669. "[I]n order to be ultimately 'justified' for purposes of applying the Back Pay Act, the suspension must ripen into a termination action based on misconduct provable by the agency." *Id.* The court noted the contrary result reached by the Court of Claims in *Jankowitz,* but concluded that "the Court of Claims failed to appreciate the realities of the situation." *Id.*

Petitioners read *Brown* as establishing the rule that reinstatement with pay to the date of the summary suspension must *always* be granted when the employee has been acquitted of the charges.

 Both the Government in its reading of *Jankowitz* and petitioners in their reading of *Brown* strive to find a clear decisional rule in a situation in which Congress has given no

guidance. Either absolute rule, denying in every case retroactive reinstatement with pay to the date of the summary suspension, or granting it in every case, seems equally arbitrary. Although choosing arbitrary rules is a privilege available to Congress, and in some circumstances to administrative agencies, courts seek to find a principled basis for preferring one rule over the other.

We do not find persuasive the notion of making the special summary suspension under § 7513(b)(1) a "conditional" adverse action. We find no basis in the statute for that theory, and it seems to add yet another complication to an already convoluted field. But neither do we find acceptable the Government's view of *Jankowitz,* since it denies, without Congressional sanction, an employee's entitlement to remuneration in circumstances in which it may be warranted.

Five years after deciding *Jankowitz,* the Court of Claims decided *Summers v. United States,* 648 F.2d 1324, 227 Ct.Cl. 353 (1981). The court in *Summers* rejected this all-or-nothing approach. The agency had chosen to reinstate and to pay the suspended-and-later-acquitted employee effective with the date of the initial suspension, not just to the date of acquittal. The agency paid the employee the base pay that had been withheld, but denied him the premium overtime pay he claimed he would otherwise have earned. When the employee sued on a Back Pay Act claim for the overtime pay, the Government changed its mind about reinstatement with pay back to the date of the suspension, and counterclaimed for the base pay that had been paid.

The Government relied on *Jankowitz* for the proposition that a suspension based solely on the fact of indictment does not constitute an unjustified or unwarranted personnel action and so does not permit reinstatement with an award of back pay to the date of suspension. The Court of Claims rejected

---

7. The court in *Jankowitz* noted that no independent administrative determination had been made regarding whether the petitioner had in fact committed the offenses charged. *Jankowitz* was subsequently cited by this court in *Wiemers v. MSPB,* 792 F.2d 1113, 1116 (Fed.Cir.1986), as controlling precedent. *Wiemers,* however, involved the situation of a separate administrative determination following the acquittal.

8. The petition for review in *Brown* was filed prior to the effective date of the Federal Courts Improvement Act of 1982, Pub.L. 97–164, 96 Stat. 37 (Apr. 2, 1982), which Act vested exclusive jurisdiction to review orders of the MSPB in the Court of Appeals for the Federal Circuit. *See* 28 U.S.C. § 1295(a)(9).

that narrow a reading of its *Jankowitz* opinion. The court stated: "[The Government] misreads our opinion [in *Jankowitz*].... It does *not* mean that if the agency *had* given Jankowitz back pay for the suspension period that *that* action would necessarily have been reversible.... [A]gencies have a certain amount of discretion to determine that an employee has undergone an unjustified or unwarranted personnel action even though a court would not require such a determination." *Summers*, 648 F.2d at 1329–30 (emphasis in original). The court denied the Government's counterclaim, holding that the exercise of discretion by the agency in making the payment "was made reasonably and without reversible error." *Id.* 648 F.2d at 1330.[9]

### D. The Case Before Us

In the case before us, petitioners' suit must fail in so far as it seeks relief through a challenge to the initial summary suspension. Petitioners alleged, not that the agency failed initially to have reasonable grounds to suspend under the summary suspension provision, but that the grounds for suspension disappeared as a result of the later acquittal. This is the theory of the *Brown* case, and, as indicated above, we expressly reject that theory.

*Jankowitz* establishes that an employee suspended under the special summary suspension provision of § 7513(b)(1), but later acquitted and reinstated, is not entitled *as a matter of right* to full back pay for the period of the suspension. The summary suspension, if properly invoked, is not made invalid by a later determination that the alleged criminal conduct was not conclusively established. However, the argument that *Jankowitz precludes* an agency from granting back pay for the entire period of the suspension is incorrect in light of the decision in *Summers*.

■ *Summers* establishes that, in appropriate circumstances, an agency *may* grant

back pay for the period during which the summary suspension was in effect. Reading this court's precedents in *Jankowitz* and *Summers* together, we conclude that the rule is, when an employee who has been suspended under the summary suspension provision is acquitted and subsequently reinstated, the agency is neither required to nor precluded from making the reinstatement with back pay retroactive to the date of the suspension. That decision is a matter for the agency, in the first instance, to make, based on all the facts and circumstances.[10]

■ *Jankowitz/Summers* and basic administrative law principles tell us something further. The agency's decision is cabined by a reviewable standard. Section 701 of the Administrative Procedure Act, 5 U.S.C. § 701, provides that federal agency actions are subject to judicial review except where there is a statutory prohibition on review or where "agency action is committed to agency discretion by law." There is nothing to suggest that Congress sought to prohibit judicial review, and nothing to indicate that this case falls within the very narrow exception for action "committed to agency discretion." *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *accord, Summers,* 648 F.2d at 1330.

■ The issue in this case, then, is whether the agency, in the exercise of its discretion, properly declined to reinstate these employees with pay effective with a date prior to the date of their acquittal. When, as here, the summary suspension is based on an indictment for a crime of which the employee is acquitted, the date of the acquittal clearly marks a date at which the agency no longer can maintain that it has reasonable grounds for summary suspension. The reason for the summary suspension disappears at that point, and, absent separate administrative proceedings on which to base an independent

---

9. It is worth noting that the authoring judge in *Jankowitz* was also the authoring judge in *Summers.*

10. Petitioners requested in their brief that the court consider their appeal *in banc,* for the express purpose of overruling *Jankowitz.* For the

reasons we have explained, we conclude that *Jankowitz,* as construed in *Summers,* is not an obstacle to an agency granting reinstatement to an employee with full back pay, and thus to petitioners' search for reinstatement with back pay, in appropriate circumstances.

adverse action,[11] the employees are entitled to reinstatement with pay as of that time.

▮ The decision the agency must make is whether the reinstatement with pay is to be made effective on the date of acquittal or on a date earlier than that. That administrative decision is a discretionary one, based on all the facts and circumstances. It is subject, as are discretionary administrative decisions generally, to the statutory standard that agency action may not be "unlawfully withheld or unreasonably delayed," and that agency action may not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Administrative Procedure Act, 5 U.S.C. § 706; *see also, Securities and Exchange Commission v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943) ("the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained").

*Jankowitz* and *Summers* establish that, in an appropriate case, a proper forum for testing the agency decision is the Court of Federal Claims in a Tucker Act suit based on the Back Pay Act, 5 U.S.C. § 5596. An agency decision regarding reinstatement that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law would appear to be also "an unjustified or unwarranted personnel action." *Id.* § 5596(b)(1). The appropriate forum in some cases may be arbitration under the provisions of a collective bargaining agreement. See *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir.1990) (in banc).

▮ Whatever the case, the relief to which these petitioners may be entitled is back pay, relief that in absence of a statutory adverse action cannot be awarded in a Subchapter II proceeding. Accordingly, the decision of the arbitrator is vacated, and the cause is remanded to the arbitrator for such further proceedings as are consistent with this opinion.

### *VACATED AND REMANDED.*

---

**11.** See note 7, *supra.*