# United States Court of Appeals for the Federal Circuit

_____

**CATHEDRAL M. HENDERSON,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

_____

2017-1071

_____

Petition for review of the Merit Systems Protection Board in No. AT-0752-15-0860-I-1.

_____

Decided: December 26, 2017

_____

JOHN MICHAEL BROWN, John Michael Brown, P.C., Augusta, GA, argued for petitioner.

AGATHA KOPROWSKI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.

_____

Before MOORE, MAYER, and STOLL, *Circuit Judges*.

MAYER, *Circuit Judge*.

Cathedral Henderson appeals the final decision of the Merit Systems Protection Board ("board") sustaining the decision by the Department of Veterans Affairs ("VA") to suspend him indefinitely from his position with the agency. *See Henderson v. Dep't of Veterans Affairs*, 123 M.S.P.R. 536 (2016) ("*Board Decision*"). Because we conclude that the board correctly determined that Henderson's indictment on fifty counts of making false statements related to health care matters provided the VA with reasonable cause to believe that he was guilty of a crime punishable by imprisonment, we affirm.

## BACKGROUND

Henderson was employed as a GS–13 Program Analyst at the VA's Health Eligibility Center in Atlanta, Georgia. *See id.* at 538. Although the VA operates numerous healthcare centers, a veteran is entitled, under certain circumstances, to obtain medical care from private physicians and facilities. Before obtaining treatment outside of the VA, however, a veteran is generally required to schedule a consultation with a designated VA supervisory physician in order to obtain pre-authorization for treatment with an outside provider. Once pre-authorization is secured, a veteran's appointment with a private provider can be scheduled. An "unresolved authorized consult" refers to a situation in which a veteran's medical appointment with an outside provider has "not been scheduled or completed, or the completed appointment ha[s] not been memorialized in the patient's medical record." Suppl. App. 12.

On July 8, 2015, a federal grand jury indicted Henderson on fifty counts of making false statements related to health care matters in violation of 18 U.S.C. § 1035, an offense punishable by fines, imprisonment, or both. The indictment alleged that between February 6, 2014, and February 11, 2014, Henderson "ordered employees of the VA under his direction to close over 2700 unresolved

authorized consults for medical care for veterans by falsely declaring the consults to have been completed or refused by the patients, when in truth and fact, as Henderson then well knew, the consults were still pending and unresolved, and the veteran patients were still waiting for the authorized medical consults." Suppl. App. 13.

In a letter dated July 22, 2015, the VA informed Henderson that it was proposing to suspend him for an indefinite period. The agency noted that: (1) Henderson had been indicted and arrested on fifty counts of making false statements related to health care matters in violation of 18 U.S.C. § 1035; and (2) if convicted, he would "face a maximum sentence of [five] years in prison and a $250,000 fine on each count." Suppl. App. 7. The agency asserted that in light of Henderson's indictment and arrest, it had "reasonable cause to believe" that he had committed a crime for which a sentence of imprisonment could be imposed. According to the VA, "[i]n light of the seriousness of [the] situation," it was not in the agency's best interest to allow Henderson to remain "in a duty status during the law enforcement investigation and any related judicial proceedings." *Id.*

On July 29, 2015, Henderson, through counsel, responded to the VA's letter proposing that he be suspended indefinitely. He denied the allegations contained in the criminal indictment, requested documentary evidence from the VA regarding his alleged wrongdoing, and asked that the proposed suspension be stayed pending the outcome of the criminal proceedings.

On August 7, 2015, the VA issued a decision indefinitely suspending Henderson from his position. The agency's decision letter stated that his suspension would remain in effect until completion of the judicial proceedings against him. It also instructed Henderson to contact the VA no later than ten days after the completion of

those judicial proceedings to inform the agency of the disposition of his case.[1]

Henderson then appealed to the board. On April 15, 2016, an administrative judge issued an initial decision sustaining the VA's decision to suspend Henderson indefinitely. According to the administrative judge, the grand jury indictment issued against Henderson provided the VA with reasonable cause to believe that he had committed a crime for which a punishment of imprisonment could be imposed. The administrative judge further determined that the VA had established a nexus between the criminal charges levied against Henderson and the efficiency of the service, stating that "at the minimum, the agency . . . established by a preponderance of the evidence that [Henderson's] misconduct interfered with or adversely affected the agency's mission." App. 7.

On appeal, the board affirmed. It stated that "one of the authorized circumstances for imposing an indefinite suspension is when [an] agency has reasonable cause to believe that an employee has committed a crime for which a sentence of imprisonment could be imposed." *Board*

---

[1] Following a trial, Henderson was found guilty on all counts in the indictment; he was subsequently sentenced to twenty-seven months in prison. *See United States v. Henderson*, No. 1:15-cr-72 (S.D. Ga. Oct. 21, 2016). Henderson then appealed his conviction to the United States Court of Appeals for the Eleventh Circuit. His appeal remains pending. "An inquiry into the propriety of an agency's imposition of an indefinite suspension looks only to facts relating to events prior to suspension that are proffered to support such an imposition." *Rhodes v. Merit Sys. Prot. Bd.*, 487 F.3d 1377, 1380 (Fed. Cir. 2007). At the time of his indefinite suspension, Henderson had been indicted but had not yet been tried or sentenced.

*Decision*, 123 M.S.P.R. at 539–40. According to the board, "an indictment following an investigation and grand jury proceeding provides more than enough evidence of possible misconduct to meet the threshold requirement of reasonable cause." *Id.* at 540 (citations and internal quotation marks omitted). The board rejected Henderson's due process claim, concluding that the agency had provided him with adequate notice of the charges against him and a reasonable opportunity to respond to those charges before suspending him. *Id.* at 541–42.

Henderson then appealed to this court. We have jurisdiction under 5 U.S.C. § 7703(b) and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### I. Standard of Review

The scope of our review of a board decision is circumscribed by statute. *See Bennett v. Merit Sys. Prot. Bd.*, 635 F.3d 1215, 1218 (Fed. Cir. 2011). We can set aside a board decision only if it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Hicks v. Merit Sys. Prot. Bd.*, 819 F.3d 1318, 1319–20 (Fed. Cir. 2016).

### II. Indefinite Suspension

When an agency proposes to take an adverse personnel action against one of its employees, it generally must comply with certain procedural requirements.[2] *See* 5

---

[2] "An indefinite suspension longer than fourteen days is an adverse agency action subject to the requirements of 5 U.S.C. § 7513." *Rhodes*, 487 F.3d at 1380; *see* 5 U.S.C. § 7512(2).

U.S.C. § 7513; *Rhodes*, 487 F.3d at 1380.  Specifically, the agency must ordinarily provide an employee with: (1) thirty-days' advance written notice of the proposed adverse action; (2) a reasonable opportunity to contest the proposed action; (3) an opportunity to be represented by counsel; and (4) a written decision which includes the specific reasons for that decision "at the earliest practicable date."  5 U.S.C. § 7513(b); *see Perez v. Dep't of Justice*, 480 F.3d 1309, 1311 (Fed. Cir. 2007).

Pursuant to what is commonly referred to as the "crime exception," *see Morrison v. Nat'l Sci. Found.*, 423 F.3d 1366, 1368 (Fed. Cir. 2005), however, an agency can suspend an employee with advance notice of less than thirty days in situations in which it has "reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed."  5 U.S.C. § 7513(b)(1); *see* S. Rep. No. 95–969, at 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2772.  Henderson contends that the VA improperly invoked the crime exception when it suspended him on shortened notice, asserting that his indictment on fifty counts of making false statements related to health care matters in violation of 18 U.S.C. § 1035 did not give the agency "reasonable cause" to believe that he had committed a crime punishable by imprisonment.  Although Henderson does not dispute that an indictment issued by a grand jury generally constitutes sufficient cause for an agency to suspend an employee indefinitely, he contends that his indictment did not provide reasonable cause for his suspension because the VA itself "procured" that indictment using "vague allegations."  According to Henderson, because employees of the VA allegedly supplied the grand jury with the testimony and evidence it considered when it returned the indictment against him, the grand jury did not act as an "independent arbiter of facts," but instead functioned "merely as the catspaw of the [VA]."

We do not find this argument persuasive. "The grand jury's historic functions survive to this day. Its responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974); *see also Wood v. Georgia*, 370 U.S. 375, 390 (1962) ("Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." (footnote omitted)); *Costello v. United States*, 350 U.S. 359, 362 (1956) (emphasizing that the grand jury has long held a "high place . . . as an instrument of justice"). The record here is devoid of any evidence suggesting that the federal grand jury which returned the indictment against Henderson failed to independently and impartially weigh the evidence presented. That the VA allegedly provided the evidence supporting Henderson's indictment does not negate the fact that an independent deliberative body determined that there was probable cause to believe that he had committed a serious crime. *See Gilbert v. Homar*, 520 U.S. 924, 934 (1997) (explaining that an indictment "serve[s] to assure that [a] state employer's decision to suspend [an] employee is not baseless or unwarranted in that an independent third party has determined that there is probable cause to believe the employee committed a serious crime" (citations and internal quotation marks omitted)); *FDIC v. Mallen*, 486 U.S. 230, 244 (1988) ("The returning of the indictment establishes that an independent body has determined that there is probable cause to believe that [an officer of a federally-insured bank] has committed a crime punishable by imprisonment for a term in excess of one year."); *see also James A. Merritt &*

*Sons v. Marsh*, 791 F.2d 328, 330 (4th Cir. 1986) ("A decision to issue an indictment is made by a deliberative public body . . . operating under constitutional and other legal constraints.").

### III. Reasonable Cause

Although section 7513(b)(1) authorizes an agency to suspend an employee on shortened notice when it has "reasonable cause" to believe that he has committed a serious crime, it does not demarcate the precise point on the criminal justice continuum at which this reasonable cause standard will be satisfied. *See Richardson v. U.S. Customs Serv.*, 47 F.3d 415, 419 (Fed. Cir. 1995). We have previously made clear, however, that when evaluating whether to invoke section 7513(b)(1)'s crime exception, an agency must remain cognizant of an employee's right to "be protected from premature or unfounded" suspension. *Dunnington v. Dep't of Justice*, 956 F.2d 1151, 1156 (Fed. Cir. 1992). On the other hand, when there is good reason to believe that an employee has engaged in criminal activity, particularly where that activity is job-related, it is incumbent upon an agency to act promptly "to protect the public and agency personnel." *Id.*; *see Morrison*, 423 F.3d at 1369; *Pararas-Carayannis v. Dep't of Commerce*, 9 F.3d 955, 958 (Fed. Cir. 1993). Where, as here, an employee is indicted on serious employment-related charges, allowing him to remain on duty could both tarnish an agency's reputation and impede its ability to carry out its mission. *See Brown v. Dep't of Justice*, 715 F.2d 662, 667 (D.C. Cir. 1983) ("An indictment is a public record, and public knowledge that an individual formally accused of job-related crimes is still on duty would undoubtedly erode public confidence in the agency.").

Although the fact that an employee has been questioned by the police regarding his suspected involvement in criminal activity might not, depending on the situation, suffice to establish reasonable cause, *see id.*, an agency

can, in appropriate circumstances, rely on an arrest warrant coupled with "additional factual material culled from [a criminal complaint] and supporting allegations," when invoking section 7513(b)(1)'s crime exception.[3] *Dunnington*, 956 F.2d at 1157–58. As we have repeatedly made clear, moreover, "an indictment for a crime for which a sentence of imprisonment may be imposed will, as a general rule, provide reasonable cause for an agency to believe that the employee has committed such a crime." *Richardson*, 47 F.3d at 419; *see Rhodes*, 487 F.3d at 1380 ("Where . . . the employee has been indicted for a crime for which a sentence of imprisonment may be imposed and the nature of the crime relates to the employee's ability to perform his or her duties, the requirements of section 7513 will have been met."); *Dunnington*, 956 F.2d at 1157

---

[3]    As we explained in *Dunnington*, "it is not the arrest that matters but the issuance of the warrant—the additional act of sending enforcement officials to locate the subject of the warrant to carry out what the warrant authorizes does not add anything to the reasonable cause determination."  956 F.2d at 1157 (footnote omitted); *see Gerstein v. Pugh*, 420 U.S. 103, 111–13 (1975) (noting that magistrates may issue arrest warrants in criminal cases only when they have been presented with sufficient evidence to provide probable cause to believe that the person charged has committed a crime).  In some unusual situations, an agency will have reasonable cause to suspend an employee on shortened notice even in the absence of either an arrest or a warrant. *See Schapansky v. FAA*, 735 F.2d 477, 486 (Fed. Cir. 1984) (concluding that an air traffic controller's "unexplained absence during a well known strike established [a] reasonable basis for the agency to believe that he was [participating in the strike] and thereby automatically established [a] reasonable basis for its belief that he had committed the crime of striking against the government").

("[A]n indictment following an investigation and grand jury proceedings, would provide, absent special circumstances, more than enough evidence of possible misconduct to meet the threshold requirement of reasonable cause to suspend."); *Jankowitz v. United States*, 533 F.2d 538, 543 (Ct. Cl. 1976) ("[I]t was entirely proper to predicate [an employee's] indefinite suspension solely upon the fact of indictment."). Here, as the board correctly concluded, Henderson's indictment on fifty counts of making false statements related to veterans' health care matters provided the VA with more than ample justification for invoking section 7513(b)(1)'s crime exception. *See Board Decision*, 123 M.S.P.R. at 540–41.

Contrary to Henderson's assertions, the VA had no obligation, in the wake of his indictment, to evaluate additional evidence and conduct further witness interviews before suspending him. *See Engdahl v. Dep't of the Navy*, 900 F.2d 1572, 1577 (Fed. Cir. 1990) ("It is not the responsibility of all government agencies to investigate criminal activity of their employees and generally they are neither authorized nor funded to do so."). If the VA had continued to investigate Henderson's alleged criminal conduct following his indictment, it might have improperly interfered with the ongoing criminal proceedings. *See id.*; *Peden v. United States*, 512 F.2d 1099, 1103 (Ct. Cl. 1975). Indeed, a post-indictment investigation by the VA could have prejudiced Henderson's criminal defense. *See Dunnington*, 956 F.2d at 1156 (noting that an agency's continued investigation of an employee's alleged criminal activity could "force a premature airing of the individual's defense in a pending criminal case").

## IV. Due Process

Henderson further contends that the VA violated his right to due process by failing to provide him with adequate notice of the specific charges against him. In support, he asserts that the VA "refus[ed] to provide any

explanation or evidence supporting its claim to reasonable cause that he committed a serious crime."

This argument falls flat. "The essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) ("Many controversieshttps://advance.lexis.com/search/?pdmfid=1000516&crid=c89cbe1d-6acb-4009-8169-25556ea82bef&pdsearchterms=339+U.S.+306&pdstartin=hlct%3A1%3A1&pdtypeofsearch=searchboxclick&pdsearchtype=SearchBox&pdqttype=and&pdpsf=&ecomp=L555k&earg=pdpsf&prid=1d555e61-562f-42cc-91ef-0e97ff5b39e3 have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). When it proposed his suspension, the VA provided Henderson with written notice of the charges against him, explaining that it had reasonable cause to believe that he had committed a crime punishable by imprisonment based on the fact that he had been indicted on fifty counts of making false statements related to health care matters. The agency stated, moreover, that the investigation leading to his "[i]ndictment revealed that during the period of February 6, 2014[,] through February 11, 2014, consults for medical care were closed without evidence of care being delivered or Veteran refusal of medical services." Suppl. App. 7. The VA further explained that the investigation that led to Henderson's indictment indicated that he had "ordered employees under [his] supervision to close over 2700 unresolved consults for medical care for Veterans by falsely declaring the consults to have been completed or refused by the patients." *Id.*

"One cannot validly be indicted on abstract charges; an indictment must set forth specifically the alleged criminal conduct." *Brown*, 715 F.2d at 666. The indictment relied upon by the VA when it suspended Henderson contained detailed information, specifying fifty occasions on which he had allegedly "caused to be written in the medical records of VA patients the statement 'services have been completed or patient refused services,' well knowing and believing that the services had not yet been provided, and that the patients never refused the services." Suppl. App. 14. We reject, therefore, Henderson's unsupported assertion that he lacked adequate information to respond competently to the charges underpinning the VA's proposed suspension action. *See Board Decision*, 123 M.S.P.R. at 542 (noting that the VA's letter proposing Henderson's suspension "described the contents of the indictment and the results of the investigation that led to the indictment"); *see also Brennan v. HHS*, 787 F.2d 1559, 1561 (Fed. Cir. 1986) ("The purpose of an agency's notice of charges is to put an employee on notice of the allegations against him in sufficient detail to apprise him of the allegations he must refute or acts he must justify.").[4]

CONCLUSION

---

[4]    In general, an agency takes an adverse personnel action against an employee if it "will promote the efficiency of the service." 5 U.S.C. § 7513(a); *see Dunnington*, 956 F.2d at 1154. In order to demonstrate that a suspension promotes the efficiency of the service, an "agency must establish a nexus between [an employee's] alleged acts of misconduct and the employee's job responsibilities." *Pararas-Carayannis*, 9 F.3d at 957. On appeal, Henderson does not challenge the determination that his suspension promoted the efficiency of the service. *See Board Decision*, 123 M.S.P.R. at 540.

Accordingly, the decision of the Merit Systems Protection Board is affirmed.

**AFFIRMED**