**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| PAMELA MESSAL, | DOCKET NUMBER |
| Appellant, | DE-0752-20-0137-I-1 |
| v. | |
| DEPARTMENT OF AGRICULTURE, | DATE: March 19, 2024 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Ryan C. Nerney, Esquire, Ladera Ranch, California, for the appellant.

Stephanie Rapp-Tully, Esquire, Washington, D.C., for the appellant.

Julie Nelson, Esquire, Golden, Colorado, for the agency.

Rayann Brunner, Esquire, Albuquerque, New Mexico, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which sustained her removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to incorporate the proper standards for the appellant's claims of discrimination and reprisal for equal employment opportunity (EEO) activity, and to supplement the whistleblower reprisal analysis, we AFFIRM the initial decision.

The appellant most recently held the position of Supervisory Forestry Technician. Initial Appeal File (IAF), Tab 10 at 19. In this fire management position, she supervised approximately 20 individuals that made up a "Hotshot Crew." IAF, Tab 11 at 22.

In November 2019, the agency proposed the appellant's removal based upon five charges, i.e., Charges A-E. IAF, Tab 11 at 4-17. The appellant presented a written response, IAF, Tab 17 at 5-15, and an oral response, IAF, Tab 10 at 30-45. In December 2019, the deciding official sustained all the charges and the proposed penalty. *Id*. at 20-29.

The appellant timely filed the instant appeal to challenge her removal. IAF, Tab 1. The administrative judge developed the record and held a 4-day hearing. *E.g.*, IAF, Tabs 46, 51, 56, 59. She then issued an initial decision in March 2022, affirming the appellant's removal. IAF, Tab 70, Initial Decision (ID).

For Charge A, absence without leave (AWOL), the administrative judge found that the agency proved all its specifications. This included specifications 1-10, which concerned absences between March 4-15, 2019, ID at 7-13, as well as specifications 11-12, which concerned absences on October 23-24, 2019, ID at 13-19. Regarding these latter specifications, the administrative judge further found that this portion of the agency's AWOL charge merged with the entirety of Charge D, failure to follow leave procedures, which concerned the same dates. ID at 13-14.

For Charge B, conduct unbecoming a supervisor, the administrative judge found that the agency proved each of its three specifications. ID at 19-23. Broadly speaking, each alleged a particular instance of the appellant changing the working conditions of the same subordinate for the worse without a legitimate reason for doing so. IAF, Tab 11 at 5. After the agency selected the subordinate for promotion over the appellant's objection, she is alleged to have needlessly taken the subordinate's second monitor, removed his gear from a cabinet he had long used, and instructed him to move his workspace out of an office and into a hall. *Id*. at 5, 14.

For Charge C, failure to follow supervisory instructions, the administrative judge found that the agency proved specifications 1-9 and 11-13, ID at 23-32, but not specification 10, ID at 30. Of those sustained, specification 9 concerned an instruction to attend a meeting, while all others concerned separate instructions about submitting or correcting the appellant's time and attendance reports. IAF, Tab 11 at 5-7.

For Charge E, failure to follow agency policy, the administrative judge found that the agency failed to meet its burden. ID at 32-33. This charge concerned an allegation that the appellant recorded conversations with coworkers without permission to do so. IAF, Tab 11 at 7.

The administrative judge next considered but rejected the appellant's various affirmative defenses. This included claims of a due process violation or

harmful error, ID at 33-35, disability discrimination based on a failure to accommodate, ID at 35-38, disability discrimination based on disparate treatment, ID at 38-39, sex discrimination, ID at 40-41, reprisal for filing EEO complaints and Occupational Safety & Health Administration (OSHA) complaints, ID at 41-42, and reprisal for whistleblowing, ID at 42-46. Finally, the administrative judge found that the agency met its burden of proving the requisite nexus and reasonableness of its penalty. ID at 46-50.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. First, she argues that the administrative judge erred by not sanctioning the agency for disclosing certain information to witnesses before the hearing. *Id*. at 4, 12-14. Next, the appellant disputes the charges. *Id*. at 14-22. She then reasserts claims of a due process violation or harmful error, *id*. at 22-24, disability discrimination, *id*. at 24-25, sex discrimination, *id*. at 25-27, reprisal for filing EEO and OSHA complaints, *id*. at 27-29, and reprisal for whistleblowing disclosures or activities, *id*. at 29-30. Lastly, the appellant challenges the reasonableness of her removal as the penalty. *Id*. at 30-33. The agency has filed a response to the agency's petition. PFR File, Tab 4.

The administrative judge did not abuse her discretion in denying the appellant's motion for sanctions or err in analyzing the testimony giving rise to the motion for sanctions.

It is undisputed that the agency provided several witnesses with access to various pleadings before they appeared to testify at the hearing that was to occur over video conference. IAF, Tab 68 at 1; Hearing Transcript, Day 1 (HT1) at 8-28. This fact was revealed at the start of the hearing. *E.g.*, HT1 at 8-12. The administrative judge acknowledged that this could have prejudiced the witnesses, and she indicated that she would take the matter into account as she weighed the probative value of their testimony. HT1 at 12-15.

The appellant moved to sanction the agency and exclude the testimony of these witnesses based on the agency's disclosure of such documents to the

agency's witnesses. HT1 at 29-30; IAF, Tab 61. The administrative judge denied the motion. IAF, Tab 68 at 1-2. She described conducting an exhaustive review of the record and testimony of the witnesses at issue and found no credible evidence that the witnesses were influenced by their improper access to portions of the record. *Id.*

On review, the appellant argues that the administrative judge erred in denying her motion for sanctions. PFR File, Tab 1 at 4, 12-13. Alternatively, the appellant argues that the administrative judge failed to properly account for the witnesses' access to pleadings when analyzing the credibility of their testimony. *Id*. at 13-14. We are not persuaded.

Absent an abuse of discretion, the Board will not reverse an administrative judge's determination regarding sanctions. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 9. In this instance, the administrative judge recognized the agency's actions, acknowledged that providing the pleadings to the witnesses might bias their testimony, allowed both parties to develop the issue, and considered the matter to determine the degree of prejudice. The administrative judge acted appropriately in recognizing that the agency's actions were potentially problematic, and permitted the appellant's counsel to explore the issue through cross-examination of each witness. HT1 at 17. We find no abuse of discretion in her resulting denial of the appellant's motion for sanctions. *E.g.*, HT1 at 8-9, 14.

Turning to the administrative judge's credibility findings, we also find no error. The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has sufficiently sound reasons for doing so. *Karnes v. Department of Justice*, 2023 MSPB 12, ¶ 13. The appellant suggests that we should overturn the administrative judge's credibility findings because they did not explicitly discuss the fact that certain witnesses had access to the

agency's pleadings. PFR File, Tab 1 at 13-14. While the administrative judge may not have explicitly discussed that fact in her credibility findings, she did discuss it in her post-hearing Motion for Sanctions and Motion to Strike Testimony ruling. As mentioned above, she found that the access by four of the witnesses to some of the pleadings and the appellant's deposition did not influence witness testimony. IAF, Tab 68 at 1-2. Moreover, the administrative judge made credibility determinations that were at least partially based upon witness demeanor. *E.g.*, ID at 6, 48. Broadly speaking, she found that the agency's witnesses provided direct testimony that was consistent with evidence of record while the appellant provided "extremely evasive" testimony that was inconsistent with the record and not believable. *Id*. We discern no basis to conclude otherwise.

The appellant has not shown that the administrative judge erred in her analysis of the charges.

On review, the appellant continues to dispute at least some of the charges and specifications that the administrative judge sustained. PFR File, Tab 1 at 14-22. We will address each in turn.

*Charge A, AWOL, and Charge D, Failure to Follow Leave Procedures[2]*

As further detailed in the initial decision, the period leading up to the appellant's first period of AWOL, from March 4-15, 2019, was one in which a subordinate filed a harassment claim against the appellant and the appellant complained that she had been subject to a hostile work environment, resulting in a supervisor filing a claim on the appellant's behalf. ID at 7. Citing the complaint *against* the appellant, the agency temporarily reassigned her as it investigated. ID at 8. In the period that followed, the appellant requested administrative leave,

---

[2] As previously noted, the administrative judge merged Charge D with specifications 11-12 of Charge A, and we agree with her having done so.

which the agency denied. *Id*. Rather than appearing and working in her temporary assignment, the appellant used other leave for many months. *Id*.

In February 2019, the appellant submitted another request for annual leave for March 4-16, 2019, which her supervisor denied, noting that the appellant had been absent since October 2018, and indicating that there was work that needed to be done. IAF, Tab 11 at 36. The appellant then submitted a request for accrued or advanced sick leave for March 4-26, 2019. *Id*. at 42. Within the accompanying comments section, the appellant remarked as follows: "Personal [r]easons. Request related to workplace sexual harassment & continued harassment & relation relating to such." *Id*. She attached a note from a nurse practitioner that simply stated that the appellant would be absent throughout the period "due to illness." *Id*. at 43. The agency denied this leave request, noting that the appellant did not have any sick leave remaining, and warning that she would be AWOL if she did not return to work. *Id*. at 46. Nevertheless, the appellant did not return to work. On March 11, 2019, the appellant emailed the agency, suggesting that the denial of her leave requests amounted to harassment or reprisal, stating that she had an otherwise unidentified "family emergency," and stating that she was also "ill." *Id*. at 48. Then, on March 17, 2019, she emailed the agency, stating that she was still "ill," and that she was "looking into FMLA." *Id*. at 51.

For specifications 1-10 of the AWOL charge, concerning March 4-15, 2019, the administrative judge found that the agency met its burden. ID at 7-13. Among other things, she noted that the record contained a request for FMLA leave and associated documentation for some subsequent periods, but not the March 4-15 AWOL days. ID at 11-13.

On review, the appellant references that FMLA documentation, dated April 29, 2019, and suggests that it should cover the March 4-15 AWOL period. PFR File, Tab 1 at 16-17 (referencing IAF, Tab 11 at 113-16). The appellant is effectively arguing that the agency should have retroactively granted her FMLA

leave even though she never requested FMLA leave for the relevant period. We disagree and find that the agency was under no such obligation. The Office of Personnel Management's implementing regulations provide that an employee may not retroactively invoke FMLA leave, absent an exception pertaining to medical inability that does not apply here. 5 C.F.R. § 630.1203(b).

Turning to specifications 11-12 of the AWOL charge, which concerned October 23-24, 2019, the administrative judge also found that the agency met its burden. ID at 13-19. As further detailed in the initial decision, these were dates the appellant failed to appear for work after her supervisor had denied her request to telework so that she could work on her EEO matters from home and had scheduled an in-person meeting with the appellant. ID at 15-18. The appellant submitted a doctor's note at some point after the fact, indicating that she should be excused from work. IAF, Tab 37 at 12-13.

On review, the appellant argues that she was entitled to FMLA leave or leave without pay (LWOP) for the October 23-24 dates in question. PFR File, Tab 1 at 21-22. The administrative judge found that the appellant did not request leave at the time, ID at 17, and the appellant has not directed us to any evidence to the contrary. The appellant suggests that the agency should have nevertheless assumed that her absence on October 23-24 was related to approved FMLA leave from months earlier. *Id*. at 21. Alternatively, the appellant argues that the agency was required to grant her LWOP. *Id*. at 21-22. We disagree.

Leading up to the dates in question, the appellant made no mention of a medical need for leave. She instead asked to work on her EEO matters from home, and then accused her supervisor of abuse when the supervisor indicated that the appellant needed to come to the office. *E.g.*, IAF, Tab 12 at 204-06. On the morning of October 23, the appellant sent her supervisor three emails in which she again requested telework to pursue her EEO matters, and again accused her supervisor of harassment when the supervisor once again indicated that she expected the appellant in the office. *Id*. at 213, 215, 218, 221, 223. In an

afternoon email, her fourth of the day to her supervisor, the appellant stated that she was ill and going to the doctor due to the supervisor's abuse. *Id*. at 223. The appellant separately sent an email to other officials indicating that she was at her local police station to file a report of threats or abuse by her supervisor. *Id*. at 221, 229. She did not request leave in any of these emails, at which point she was already AWOL. We found nothing showing that the appellant indicated that she was entitled to FMLA leave later that day or the next when she was also AWOL. In fact, it is not even apparent that the appellant had FMLA leave remaining by the time of these absences. *Compare* IAF, Tab 11 at 119 (approving the appellant's request for FMLA leave for the period between March 18 and June 16, 2019), *with* 5 C.F.R. § 630.1203 (describing an employee's entitlement to 12 weeks of FMLA leave during any 12-month period). Accordingly, we do not find that the agency was obligated to retroactively place her in an FMLA leave status, without any associated request by the appellant.

Regarding the appellant's alternative argument, about LWOP, the Board will consider whether an agency's denial of LWOP, a category of leave which is discretionary, was reasonable in some circumstances involving medical excuses. *Sambrano v. Department of Defense*, 116 M.S.P.R. 449, ¶ 4 (2011). Here, though, the appellant did not request LWOP for October 23-24, 2019. Even if she had, we would find the agency's denial of LWOP reasonable, given the appellant's many months of prior absences and the well-documented circumstances surrounding her October 23-24 absence.

*Charge B, conduct unbecoming a supervisor*

To recall, each specification of the conduct unbecoming a supervisor charge alleged a particular instance of the appellant changing the working conditions of the same subordinate for the worse, without a legitimate reason for doing so. IAF, Tab 11 at 5. The agency alleged that she removed a second monitor the subordinate had been using, which was the private property of another employee, only to place it in her own office unused, she instructed the

subordinate to remove his gear from a cabinet he had personally recovered from a dumpster and used for years, and she directed the subordinate to vacate a shared office and move his workspace into a hallway. *Id*.

On review, the appellant argues that these allegations were false or that her conduct was not unbecoming. PFR File, Tab 1 at 17-19. To do so, she presents several brief arguments. For example, the appellant reasserts her own testimony and she challenges written statements by other witnesses because they signed their statements without also initialing each page. *Id*. at 18-19. The appellant also speculates that one witness may have been motivated to provide false allegations so that he could take over the appellant's position after her removal. *Id*. at 19. Additionally, the appellant describes the acts as minor discretionary decision making. *Id*.

We are not persuaded. Although the appellant testified that she removed the subordinate's monitor and access to the cabinet for the sake of fairness to other employees, the administrative judge did not find that explanation credible, especially when compared to the appellant's prior explanations about the matters and other witness testimony or statements about the surrounding circumstances. ID at 19-21. For similar reasons, the administrative judge did not find the appellant's testimony about moving the subordinate's work location for the purpose of better communication among employees to be credible. ID at 22-23. The appellant's brief arguments, such as her reassertion of her own testimony and speculations about the motivations of others, do not provide a basis for disturbing the administrative judge's findings, which are grounded in credibility determinations. *See Karnes*, 2023 MSPB 12, ¶ 13.

*Charge C, failure to follow supervisory instructions*

We next turn to the failure to follow supervisory instructions charge, of which the administrative judge sustained specifications 1-9 and 11-13. ID at 23-32. Broadly speaking, specifications 1-9 and 12-13 concerned different dates and instructions that the appellant failed to follow pertaining to her time

and attendance reports. IAF, Tab 11 at 5-7. Specification 11 concerned the appellant failing to appear after being instructed to attend a meeting. *Id*. at 6.

On review, the appellant challenges specifications 1-6, which are specific to instructions between March 27 and June 10, 2019, asserting that she was entitled to FMLA leave throughout that period so any instructions relating to her submission of time and attendance reports were improper. PFR File, Tab 1 at 20. We disagree. Throughout this time, the appellant was active in terms of her time and attendance reports, so we discern no basis for concluding that it was improper for the agency to give her instructions about the same.

For example, in specification 1, the agency instructed the appellant to update her time and attendance report to reflect her new first-level supervisor. IAF, Tab 11 at 53. Within hours, the appellant defied that instruction, choosing her fourth-level supervisor as the individual listed as her supervisor for time and attendance reporting. *Id*. at 55. It is therefore apparent that the appellant was not incapacitated or otherwise unable to receive and respond to the instruction, despite the appellant's insinuation to the contrary.

In specification 2, the appellant and her supervisor exchanged numerous emails about her time and attendance report covering the March 2019 AWOL period. IAF, Tab 11 at 65-70. Her supervisor explained that the appellant's reporting of LWOP for the days at issue was not approved and needed to be changed to reflect her AWOL status, whereas the appellant disagreed. *Id*. Again, there is nothing in the record suggesting that the appellant was incapacitated and unable to follow the instructions, or that it was otherwise improper for the agency to instruct the appellant to correct her erroneous time and attendance reporting.

The appellant also challenges specifications 12-13, stating that she was not AWOL, so the instructions to amend her timesheet to include AWOL hours were not proper. PFR File, Tab 1 at 21. But as the administrative judge correctly

determined that the appellant was AWOL for those hours, we find the appellant's reliance on a contrary conclusion to be unavailing.[3]

<u>The appellant did not prove her affirmative defenses.</u>

As previously stated, the appellant's petition for review reasserts claims of a due process violation or harmful error, PFR File, Tab 1 at 22-24, disability discrimination, *id*. at 24-25, sex discrimination, *id*. at 25-27, reprisal for filing EEO and OSHA complaints, *id*. at 27-29, and reprisal for whistleblowing, *id*. at 29-30. We will address each in turn.

*Due process or harmful error*

On review, the crux of the appellant's due process and harmful error argument is that the response period for her proposed removal was too short. PFR File, Tab 1 at 22-24. The agency proposed her removal on November 13, 2019. IAF, Tab 11 at 4-8. The proposal indicated that the appellant could submit a response within 7 calendars days, while also scheduling a meeting November 21, 2019, for purposes of any oral response. *Id*. at 8. Although the appellant sought an extension of at least a week, the agency denied that request. IAF, Tab 33 at 4-8.[4]

To the extent that the appellant is suggesting that the agency committed a harmful error, she has not carried her burden. A harmful error is an error by the agency in the application of its procedures that is likely to have caused the agency to reach a different conclusion from the one it would have reached in the absence or cure of the error. *Semenov v. Department of Veterans Affairs*, 2023

---

[3] The appellant has not presented any argument about specifications 7-9 and 11, and we discern no error in the administrative judge's conclusion that the agency met its burden. PFR File, Tab 1 at 20-21. The appellant does present arguments on review about specification 10, PFR File, Tab 1 at 20-21, but that is the specification the administrative judge did not sustain, ID at 30, so we need not further consider the matter.

[4] The record suggests that the agency denied the request for extension because of the deciding official's limited availability and the agency's belief that an unidentified Executive Order required that it issue a decision within 14 days of the proposed removal. IAF, Tab 33 at 5.

MSPB 16, ¶ 23.  Here, the appellant has not identified any agency procedure that it erred in applying or that any such error was harmful.

To the extent that the appellant is suggesting that the agency committed a due process violation, we are not persuaded.  The essential requirements of constitutional due process for a tenured public employee are notice of the charges against her, an explanation of the evidence, and an opportunity for her to present her account of events.  *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).  The Board has further stated that due process requires, at a minimum, that an employee being deprived of her property interest be given the opportunity to be heard at a meaningful time and in a meaningful manner. *Palafox v. Department of the Navy*, 124 M.S.P.R. 54, ¶ 9 (2016).[5]

Here, the agency provided 7 days for the appellant to respond to her proposed removal, and she responded within that period.  IAF, Tab 10 at 30-45, Tab 17 at 5-15.  The appellant nevertheless suggests that she was unable to provide a *meaningful* response in that amount of time because the documentation attached to her proposed removal was extensive and she needed to gather documentation of her own.  PFR File, Tab 1 at 23.  However, the appellant has not provided any further explanation.  She has merely speculated that additional time would have led to a better-prepared response.  We find that the appellant's limited argument does not establish that the agency denied her due process. *See, e.g., Henderson v. Department of Veterans Affairs*, 123 M.S.P.R. 536, ¶¶ 1-13 (2016) (finding that an appellant who was given 7 days to respond to their proposed adverse action was not denied due process), *aff'd* 878 F.3d 1044 (Fed. Cir. 2017); *Ronso v. Department of the Navy*, 122 M.S.P.R. 391, ¶ 13 (2015) (same); *Ray v. Department of the Army*, 97 M.S.P.R. 101, ¶ 22 (2004) (finding that an appellant may have preferred a longer response period, the agency's

_____

[5] Though not invoked by the appellant, there is a statutory requirement that an individual such as the appellant be given "a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of" her response to the proposed removal.  5 U.S.C. § 7513(b)(2).

denial of an extension did not violate his due process rights), *aff'd*, 176 F. App'x 110 (Fed. Cir. 2006).

*Disability discrimination*

Turning to her claim of disability discrimination, the appellant also presents limited argument. She asserts that agency officials "failed to fully engage in the requisite interactive process" and that they "generally ignored her medical conditions and requests for leave by continuously changing her [leave] to AWOL." PFR File, Tab 1 at 24-25. The appellant further asserts that the administrative judge considered the motivations of the deciding official, without considering whether any others who played a role in her removal may have been motivated by her disability. *Id*. at 25.

Following the issuance of the initial decision, the Board clarified that an appellant may prove disability discrimination by demonstrating that it was a motivating factor in the contested personnel action. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 22, 40, 42. The administrative judge found that the appellant did not present any credible evidence that her disability motivated the agency's removal action. ID at 38-39. In her petition, the appellant is correct that the administrative judge's discussion focused on the deciding official, without mentioning any other agency official. PFR File, Tab 1 at 25; ID at 39. But the appellant has not elaborated by presenting argument or evidence about the motivations of others, despite it being her burden to prove this claim. PFR File, Tab 1 at 25. Accordingly, we find no reason to find that the appellant proved that her disability was a motivating factor in the removal action before us.[6]

The administrative judge found that the appellant did not prove her failure to accommodate claim because, inter alia, the appellant declined the agency's

---

[6] Because we find that the appellant failed to prove that disability discrimination was a motivating factor in the agency's action, we need not reach the question of whether the appellant proved that it was a but-for cause of the agency's action. *Pridgen*, 2022 MSPB 31.

offer to engage in the reasonable accommodation process. ID at 37-38. The appellant's petition for review does not identify any evidence to the contrary, nor does it present substantive argument to the contrary. Her bare assertion that the agency failed to fully engage in the interactive process is therefore unavailing. *See* 5 C.F.R. § 1201.115(a) (providing that a petition for review must identify specific evidence in the record demonstrating any alleged erroneous findings of material fact and explain why the challenged factual determinations are incorrect).

*Sex discrimination*

Like her disability discrimination claim, the motivating factor standard applies to the appellant's claim of sex discrimination, so we modify the initial decision to incorporate this standard. *Pridgen*, 2022 MSPB 31, ¶¶ 20-22. The administrative judge found that the appellant submitted a bare allegation but no credible evidence that the agency's actions were motivated by sex. ID at 40-41. The appellant reasserts her sex discrimination claim on review, but still presents little more than speculation that sex was a motivating factor in her removal. PFR File, Tab 1 at 25-26. Without more, the appellant has not shown that the administrative judge erred in denying this affirmative defense.[7] *See* 5 C.F.R. § 1201.115(a).

*Reprisal for EEO complaints*

Claims of retaliation for opposing sex discrimination in violation of Title VII are analyzed under the same framework as a sex discrimination claim. *Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 32; *Pridgen*, 2022 MSPB 31, ¶ 30. However, a but-for causation standard is applicable to retaliation claims based on activity protected under the Rehabilitation Act. .The but-for standard is

---

[7] The only portion of the record the appellant cites is her written declaration from below. PFR File, Tab 1 at 26 (referencing IAF, Tab 14 at 26-31). By itself, that declaration is not persuasive, especially when accounting for the administrative judge's conclusion that the appellant regularly sought to manipulate information to create an inaccurate narrative and was not credible. ID at 6.

more stringent than the motivating factor standard. *Desjardin*, 2023 MSPB 6, ¶ 31; *Pridgen*, 2022 MSPB 31, ¶ 47.

On review, the appellant correctly notes that the administrative judge's analysis for this claim also focused on the deciding official, without explicitly discussing whether others may have been motivated to retaliate for her EEO activity. PFR File, Tab 1 at 27; ID at 42. But she once again fails to provide any substantive or persuasive argument to support her claim. Aside from summarily asserting that some relevant officials were implicated by some of her EEO activities, the appellant's petition includes no substantive argument or reference to evidence that would prove by preponderant evidence that her EEO activity was even a motivating factor in her removal.[8] *Id*. at 28-29. We therefore find that the appellant has not met her burden.

*Reprisal for OSHA complaints*

To the extent that the appellant alleged that her removal was reprisal for filing OSHA complaints, the administrative judge considered the matter under both 5 U.S.C. § 2302(b)(8), a provision prohibiting whistleblower reprisal, and (b)(9)(A)(ii), a provision prohibiting reprisal for the filing of a complaint that does not regard remedying whistleblower reprisal, but she found the claim unavailing. ID at 41-42, 45. The administrative judge explained that while it was undisputed that the appellant filed OSHA complaints, the appellant failed to prove that her removal could have been retaliation for OSHA complaints, that there was a genuine nexus between her removal and OSHA complaints, or that her OSHA complaints contained protected whistleblowing disclosures. ID at 42, 45.

For an appellant to prevail on an affirmative defense of retaliation for activity protected under 5 U.S.C. § 2302(b)(9)(A)(ii), if she does not allege reprisal for EEO activity protected under Title VII, she must show that: (1) she

---

[8] The appellant once again cited her written declaration from below, but no other evidence of record. PFR File, Tab 1 at 28-29 (referencing IAF, Tab 14 at 26-31). For the reasons already discussed in this decision and the initial decision, that declaration is not particularly persuasive. *Supra*, n.7.

engaged in protected activity; (2) the accused official knew of the activity; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the adverse action. *Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶ 8 (2016). On the other hand, under 5 U.S.C. § 2302(b)(8), it is a prohibited personnel practice to take a personnel action because of any disclosure of information by an employee that the employee reasonably believes evidences any violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 5.

In her petition for review, the appellant has not presented any substantive arguments about her OSHA complaints or the administrative judge's findings about the same. She does not, for example, identify any associated evidence of record, describe the nature of her OSHA complaints, or explain why she believes they played a role in her removal action.

Based upon our own review of the record, we located some indications that the appellant filed an OSHA complaint about rodents in the office where she worked.[9] The complaint alleged that the agency had denied her resulting request to telework full-time, despite rodent feces throughout the office causing her months of flu-like symptoms and multiple trips to an urgent or emergency care center. IAF, Tab 34 at 144-50. The agency provided a thorough response to OSHA officials that, inter alia, described a physical inspection, the absence of any physical sign of rodents in the building, and the absence of any other individuals reporting that they had seen rodents or signs of their presence. *Id*. at 142-43. Based upon this limited evidence and the absence of further

_____

[9] The administrative judge seemed to indicate that she did not consider the OSHA complaint because it was not admitted into the record, and the record was therefore devoid of any OSHA complaint. ID at 45 n.6 (referencing IAF, Tab 34 at 145, Tab 65). Because we were able to locate this information in the record and are unable to find any explanation for why the administrative judge did not admit this evidence into the record, we are considering the evidence.

argument from the appellant, we agree with the administrative judge's conclusion that the appellant failed to meet her burden for her claim of reprisal relating to this or any other OSHA complaint under 5 U.S.C. § 2302(b)(8) or 5 U.S.C. § (b)(9)(A)(ii). *See* 5 C.F.R. § 1201.115(a).

*Reprisal for whistleblowing activities*

Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), to prevail on a prohibited personnel practice affirmative defense in a chapter 75 appeal that independently could form the basis of an individual right of action appeal, once the agency proves its adverse action case by a preponderance of the evidence, the appellant must demonstrate by preponderant evidence that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that the disclosure or activity was a contributing factor in the adverse action. *Fisher*, 2023 MSPB 11, ¶ 5. If the appellant meets this burden, then the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected disclosure or activity. *Id*. In determining whether the agency has met this burden, the Board will consider all the relevant factors, including the following: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

The administrative judge applied these standards and found that the appellant did not prove that her OSHA complaints contained the type of disclosure protected by section 2302(b)(8), and we agree. ID at 42-45. Conversely, the administrative judge found that the appellant's OIG complaint was protected under section 2302(b)(9)(C), regardless of its contents.

*Id.*; *see Fisher*, 2023 MSPB 11, ¶ 8.  She further found that the appellant satisfied her burden regarding the contributing factor element because the deciding official testified that he did not remember the appellant's OIG complaint, but "probably was briefed" on it at some point.  ID at 45-46; Hearing Transcript, Day 3 (HT3) at 112 (testimony of deciding official).

Because the administrative judge found that the appellant presented this prima facie case of reprisal under section 2302(b)(9)(C), she shifted the burden of persuasion to the agency.  The administrative judge found that there was overwhelming evidence in support of the agency's removal action, there was no evidence that the deciding official had any motive to retaliate, and there was no evidence of similarly situated employees who were not whistleblowers.  ID at 46.

On review, the appellant correctly notes that the administrative judge's analysis discusses the potential motive of the deciding official but no other individual.  PFR File, Tab 1 at 29-30.  However, the appellant presents no other substantive argument regarding her whistleblower reprisal claim.

Nonetheless, we modify the initial decision to supplement the administrative judge's *Carr* factor analysis while reaching the same conclusion—that the appellant's whistleblower reprisal claim fails.  Like the administrative judge, we find that the evidence in support of the agency's removal action is strong.  There is abundant documentary evidence showing how the appellant was absent from work for many months, culminating with her AWOL on several dates spanning many more months, despite warnings.  ID at 7-19; *supra*, ¶¶ 17-24.  There is also ample evidence, including numerous emails and other documentation, showing how the appellant repeatedly defied simple and unambiguous instructions, mostly as she sought to avoid work and take more leave than allowed.  ID at 23-32; *supra*, ¶¶ 28-32.  Lastly, there is solid evidence of the appellant engaging in unbecoming conduct towards her subordinate, including some admissions by the appellant.  ID at 19-23; *supra*, ¶¶ 25-27.  The limited argument or evidence the appellant presented to

defend against these charges was not persuasive. To recall, the administrative judge did not find the appellant to be credible. ID at 6. Among other things, she explained how the appellant had an ever-changing story and regularly tried to manipulate information to create an inaccurate narrative. *Id*.

We recognize that the administrative judge did not sustain one of the agency's charges, about failing to follow policy by recording a meeting without permission, and one specification of the failure to follow supervisory instructions. However, these were not particularly consequential in the grand scheme of the removal action, which spanned many acts over more than a year. IAF, Tab 11 at 4-7.

Turning to the motive to retaliate, we note that although the appellant has repeatedly referenced OIG complaints, she provided limited details about the same. Within her petition for review, the appellant's only mentions of OIG complaints are cursory ones in which she recounts the wide variety of complaints she has lodged against the agency. PFR File, Tab 1 at 27-28. While doing so, the appellant references just one piece of evidence—a declaration by the appellant, in which she makes no mention of an OIG complaint. PFR File, Tab 1 at 28 (referencing IAF, Tab 14 at 26-31). Elsewhere, in the appellant's "affirmative defense brief," she described her OIG complaint as occurring in February 2018. *Id*. at 13. But she did not describe the contents or subject of the complaint, nor did she point to evidence of the same. *Id*. Separately, the same pleading includes a November 2019 email from the appellant to OIG, in which she complains of years-long harassment that had culminated with her impending removal and the appellant fearing for her life. *Id*. at 113-14.

Within her testimony, the appellant described what seems to have been other OIG complaints about agency officials engaging in sexual harassment. HT3 at 151-52, 155-58 (testimony of the appellant). There is also testimony from another witness suggesting that the appellant filed a different OIG complaint at some point, which alleged that one of her subordinates sexually harassed her—the

subordinate who was subject to the appellant's unbecoming conduct. HT1 at 168 (testimony of appellant's subordinate). Finally, the appellant's closing brief once again mentions that she filed an OIG complaint, but this time the complaint is merely identified as occurring in October 2019. IAF, Tab 64 at 18. This closing brief does not elaborate on the alleged complaint, and it only points to a portion of the record pertaining to her OSHA complaint about rodents. *Id*. (referencing IAF, Tab 34 at 145).

This is just some of the history of complaints described in the record, most of which we were unable to corroborate with further documentation. The lone exception we came across is a February 2019 OIG report, in which OIG concluded that it could not substantiate the appellant's claim of harassment by a former supervisor.[10] IAF, Tab 36 at 5-11. Specific to the appellant's theory of reprisal, we also came across testimony in which appellant's counsel asked why she believed the agency would retaliate for "an OIG complaint," and the appellant simply responded that "basically, [it] just turned the heat up on the harassment." HT3 at 251-52 (testimony of the appellant).

We acknowledge that relevant officials may have had some motive to retaliate for any OIG complaint of which they were aware.[11] Broadly, the appellant was routinely filing complaints about the agency both internally and with external parties such as the OIG and local police. This was surely frustrating to at least some agency officials. However, the lone OIG report we

---

[10] Following her initial complaints about this supervisor, in March 2018, the appellant was reassigned to a different supervisor in May 2018. ID at 7; IAF, Tab 38 at 10. For context, the appellant's conduct unbecoming a supervisor occurred prior to this change in her chain of command, but all other conduct underlying her removal occurred nearly a year or more after. IAF, Tab 11 at 4-7. The former supervisor was not the proposing or deciding official, and he did not testify at the hearing below.

[11] The Federal Circuit has cautioned the Board against taking an "unduly dismissive and restrictive view" of retaliatory motive, holding that, "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated . . . , and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012)

found in the record indicated that the appellant's allegations could not be substantiated, and those allegations were directed at an individual who played little if any role in the appellant's removal. IAF, Tab 36 at 5-11.

Weighing the *Carr* factors together, we find that the agency would have taken the same removal action in the absence of the appellant's protected whistleblowing activity.[12] Although agency officials may have harbored some motive to retaliate for the appellant's protected whistleblowing activity, this is far outweighed by the strength of the evidence in support of the agency's removal action. The appellant's whistleblower reprisal claim is, therefore, unsuccessful.

Removal was a reasonable penalty.

When, as here, the Board does not sustain all the charges, it will carefully consider whether the sustained charges merit the penalty imposed by the agency. *Moncada v. Executive Office of the President*, 2022 MSPB 25, ¶ 39. The Board may mitigate the penalty imposed by the agency to the maximum penalty that is reasonable in light of the sustained charges as long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed for fewer charges. *Id*.

The administrative judge applied this standard and found that removal was reasonable. ID at 47-50. The appellant disagrees. PFR File, Tab 1 at 30-33. In particular, she characterizes hers as an unblemished and highly successful career of 23 years. *Id*. at 32. The deciding official and administrative judge accounted for the same, recognizing that this was a mitigating factor, but concluded that the appellant failed to take responsibility for her misconduct or show remorse for her actions and was a poor candidate for rehabilitation. ID at 49; IAF, Tab 10 at 26-27.

---

[12] As already mentioned, the administrative judge found that there was no evidence pertaining to the third *Carr* factor, about similarly situated non-whistleblowers, which effectively removes the factor from the analysis. *See Whitmore*, 680 F.3d at 1374.

The appellant separately argues that the deciding official and administrative judge erred by characterizing her lack of remorse as an aggravating factor, because this essentially penalized her for mounting a defense. PFR File, Tab 1 at 33 (citing *Raco v. Social Security Administration*, 117 M.S.P.R. 1 (2011)). In fact, what the deciding official and administrative judge found was that the appellant lacked rehabilitation potential because she failed to take responsibility for her actions or show remorse. ID at 49-50; IAF, Tab 10 at 29. We agree with that assessment. *See, e.g.*, IAF, Tab 10 at 30-45, Tab 17 at 5-10. The appellant has not pointed us to anything reflecting otherwise. This contrasts with the case cited by the appellant, where an employee confessed to her inappropriate conduct and apologized for it before mounting a defense to her proposed removal by way of explaining her behavior and identifying mitigating factors. *Racco*, 117 M.S.P.R. 1, ¶ 16.

In her petition for review, the appellant has not presented any other substantive arguments about the reasonableness of her removal, and we find no basis for reaching a conclusion different than that of the administrative judge. Among other things, some of the sustained charges are quite serious. *See Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 20 (recognizing that the nature and seriousness of the offense is the most important factor in assessing the penalty). This includes her conduct unbecoming, which the proposing and deciding officials described as negative and unequal treatment of a subordinate she disfavored for a promotion after he was nevertheless selected for that promotion. *E.g.*, IAF, Tab 10 at 25, Tab 11 at 14. Plus, the appellant holds a supervisory position, and she repeated some of the conduct underlying this action in the face of warnings that it would lead to discipline. *Id*. at 25-26; *see, e.g., Thomas*, 2022 MSPB 35, ¶ 21 (recognizing that supervisors may be held to a higher standard of conduct). Weighing these and other relevant *Douglas* factors, we agree with the administrative judge's conclusion that removal is a reasonable penalty for the sustained charges and specifications. *See Douglas v. Veterans*

*Administration,* 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors that might be relevant when assessing the reasonableness of the penalty).

## NOTICE OF APPEAL RIGHTS[13]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.   *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals<br>
for the Federal Circuit<br>
717 Madison Place, N.W.<br>
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[14] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.